

**SO ORDERED,**

Judge Jason D. Woodard

United States Bankruptcy Judge

The Order of the Court is set forth below. The case docket reflects the date entered.

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BECKY McCOLLUM, | ) | Case No.:   19-15087-JDW |
| | ) | |
| Debtor. | ) | Chapter 13 |
| | ) | |

| | | |
|---|---|---|
| LOCKE D. BARKLEY, | ) | |
| CHAPTER 13 TRUSTEE FOR | ) | |
| THE BANKRUPTCY ESTATE | ) | |
| OF BECKY McCOLLUM | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | A.P. No.:   20-01034-JDW |
| | ) | |
| GLOBAL CLIENT | ) | |
| SOLUTIONS, LLC, | ) | |
| DONALD NORRIS & | ) | |
| ASSOCIATES, PLLC D/B/A | ) | |
| STONEPOINT LEGAL GROUP, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This Adversary Proceeding comes before the Court for consideration of the *Motion to Dismiss or Alternatively, to Compel Arbitration and Stay or Dismiss the Case* (the "Motion") (A.P. Dkt. # 6) filed by Global Client Solutions, LLC ("GCS") and the *Trustee's Response to the Motion to Dismiss or Alternatively to Compel Arbitration* (the "Response") (A.P. Dkt. # 28) filed by Locke D. Barkley, Chapter 13 Trustee for the Bankruptcy Estate of Becky McCollum (the "Plaintiff"). The Plaintiff's Complaint (A.P. Dkt. # 1) alleges four counts against GCS. GCS contends in the Motion and its corresponding *Memorandum of Law in Support of Motion to Dismiss* (A.P. Dkt. # 7) that the Court should compel Count VI, Breach of Fiduciary Duty, to arbitration.[1]

The Court concludes that Count VI falls within a valid arbitration provision and no federal or state policy renders that claim non-arbitrable under the facts and circumstances of this case. The motion is therefore due to be granted and Count VI compelled to arbitration.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334, and the *United States District Court for the Northern District of*

---

[1] GCS has answered Counts I – III and that portion of the adversary proceeding will be heard by this Court.

2

*Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 6, 1984.

## II. FINDINGS OF FACT

The Plaintiff alleges, and GCS agrees, that prior to filing bankruptcy, Becky McCollum (the "Debtor") engaged Stonepoint Legal for debt relief services (A.P. Dkt. # 1, ¶ 1-2; A.P. Dkt. # 5, ¶ 1-2). Stonepoint Legal then directed the Debtor to GCS, which established a special purpose account for her and held her funds for the debt relief program (A.P. Dkt. # 1, ¶¶ 2-3; A.P. Dkt. # 5, ¶¶ 2-3). The parties agree that the Debtor deposited over $9,500.00 into the account (A.P. Dkt. # 1, ¶¶ 3, 38; A.P. Dkt. # 5, ¶¶ 3, 38). Neither party disputes that the Debtor entered into a Dedicated Account Agreement and Application with GCS (the "Agreement), which included an arbitration provision.[2]

## III. CONCLUSIONS OF LAW

The Federal Arbitration Act ("FAA") mandates that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[3] The Court of Appeals for the Fifth Circuit has previously held that consistent with

---

[2] In the Motion, GCS attached a copy of the Agreement as Exhibit A (A.P. Dkt. # 6). In the Response, the Plaintiff does not dispute the existence of the Agreement, referring to it as "Global's arbitration agreement" (A.P. Dkt. # 28, p. 8).
[3] 9 U.S.C. § 2.

the policy of the FAA, "all doubts concerning the arbitrability of claims should be resolved in favor of arbitration."[4] The Plaintiff, as the party opposing arbitration, bears the burden of proving that Congress intended to preclude arbitration of the disputed claims.[5]

The Fifth Circuit has established "a bifurcated inquiry to determine whether parties should be compelled to arbitrate a dispute. First, the court must determine whether the parties agreed to arbitrate the dispute."[6] The inquiry is whether the parties formed a valid, enforceable contract under state law and whether the dispute falls within the scope of the arbitration agreement.[7] The parties here do not dispute that the Agreement was validly formed and enforceable (A.P. Dkt. # 6, Ex. A, ¶ XVII; A.P Dkt. # 28, p. 8). The Plaintiff does not contend in the Complaint or its Response that the Debtor did not sign the Agreement, that it was obtained by fraud, or that any grounds in law or equity exist for the revocation of the Agreement. Neither does the Plaintiff expressly contend that Count VI is not subject to the arbitration provision in the Agreement. But for the avoidance of doubt, the Court finds that the claim falls within the scope of the arbitration provision. The Agreement's arbitration provision provides, in part:

---

[4] *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002).
[5] *Green Tree Financial Corp.-Ala. v. Randolph*, 531 U.S. 79, 81 (2000).
[6] *Washington Mutual Finance Group, LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004).
[7] *OPE Int'l, LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445-446 (5th Cir. 2001).

> In the event of any controversy between the parties, including, but not limited, to any claim, dispute, demand, cross claim, counterclaim, or third party complaint (whether contractual, statutory, in tort, or otherwise) arising out of or relating to this Agreement or its performance, breach, termination, enforcement, interpretation or validity, including the validity, scope, or applicability of this provision to arbitrate, must be resolved by binding and confidential arbitration.[8]

Count VI alleges that the Debtor made payments to GCS and that GCS aided and abetted Stonepoint Legal's breach of fiduciary duty "in siphoning money away from Becky by promising her debt relief that would never come" (A.P. Dkt. # 1, ¶¶ 87(f),(i)). Because Count VI is a state law claim relating to the Agreement and its performance, it falls within the arbitration provision of the Agreement.

The thrust of the Plaintiff's argument is that the arbitration provision should be overridden by bankruptcy law. "Once the court finds the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims non-arbitrable."[9] Specifically, bankruptcy courts may decline to enforce arbitration agreements when "the cause of action at issue is not derivative of the pre-petition legal or equitable rights possessed by a debtor but rather is derived entirely from the federal rights conferred by the Bankruptcy Code."[10] The Fifth Circuit has held that bankruptcy courts retain

---

[8] A.P. Dkt. # 6, Ex. A, ¶ XVII.
[9] *Bailey*, 364 F.3d at 263.
[10] *Matter of Nat'l Gypsum Co.*, 118 F.3d 1057, 1069 (5th Cir. 1997).

"significant discretion to assess whether arbitration would be consistent with the purpose of the Code, including the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders."[11] But bankruptcy courts may not refuse to compel arbitration if the matters in dispute do not involve core bankruptcy proceedings.[12]

Core proceedings either arise under the Bankruptcy Code or in a bankruptcy case.[13] A non-core proceeding does not "invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy."[14] Ultimately, the "nonenforcement of an otherwise applicable arbitration provision turns on the underlying nature of the proceeding, *i.e.*, whether the proceeding derives exclusively from the provisions of the Bankruptcy Code and, if so, whether arbitration of the proceeding would conflict with the purposes of the Code."[15]

Count VI alleges that GCS aided Stonepoint Legal in breaching its fiduciary duty. This is a state law contract claim which arose prepetition, could exist outside the bankruptcy case, and is tangential to the bankruptcy case. It does not invoke a substantive right created by bankruptcy law and is a non-

---

[11] *Id.*
[12] *In re Gandy*, 299 F.3d 489, 495 (5th Cir. 2002).
[13] *Wood v. Wood*, 825 F.2d 90, 97 (5th Cir. 1987).
[14] *Id.*
[15] *Nat'l Gypsum*, 118 F.3d at 1067.

6

core claim. In fact, Count VI does not reference the Bankruptcy Code or any right conferred by the Code (A.P. Dkt. # 1, ¶¶ 70-89).

The Plaintiff argues that the liquidation and the administration of the claim should not be delegated to an arbitrator because this Court has the ability "to coordinate the timing of that process with other aspects of a debtor's reorganization and ensure expeditious distribution to creditors" (A.P. Dkt. # 28, p. 9). But the Plaintiff, as trustee, is merely stepping into the shoes of the debtor to prosecute a claim belonging to the estate and is "bound by the arbitration agreement to the same extent as the debtor."[16] Any recovery by the trustee will be property of the bankruptcy estate and distributed according to the Bankruptcy Code, regardless of whether the claim is heard by this Court or an arbitrator. Arbitrating Count VI does not alter the bankruptcy estate's interest in the claim.

## CONCLUSION

The Plaintiff has failed to carry its burden. The Debtor signed the Agreement, including the arbitration provision, and because Count VI did not arise under the Bankruptcy Code or in the bankruptcy case, it is a non-core proceeding. No federal bankruptcy interest overrides the federal policy interest in compelling Count VI to arbitration in this case.

---

[16] *In re Huffman*, 486 B.R. 343, 355 (Bankr. S.D. Miss. 2013).

Accordingly, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that the motion to compel Count VI to arbitration is **GRANTED** and Count VI is **DISMISSED** without prejudice.

##END OF OPINION##