___



SO ORDERED,



Judge Jason D. Woodard

United States Bankruptcy Judge

The Order of the Court is set forth below. The case docket reflects the date entered.

___

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BECKY McCOLLUM, | ) | Case No.:  19-15087-JDW |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |

___

| | | |
|---|---|---|
| BECKY McCOLLUM, | ) | |
| LOCKE D. BARKLEY, | ) | |
| CHAPTER 13 TRUSTEE | ) | |
| FOR THE BANKRUPTCY | ) | |
| ESTATE OF | ) | |
| BECKY McCOLLUM, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | A.P. No.:  20-01034-JDW |
| | ) | |
| DONALD NORRIS & | ) | |
| ASSOCIATES, PLLC d/b/a | ) | |
| STONEPOINT LEGAL | ) | |
| GROUP, et al., | ) | |
| | ) | |
| Defendants. | ) | |

1

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the *Defendants' Joint Motion to Stay and Compel Arbitration or to Dismiss for Failure to State a Claim* (the "Motion")[1] filed by the defendants, Stonepoint Legal ("Stonepoint"), Donald Norris ("Norris"), Leigh Anne Cade ("Cade"), and Strategic Financial Solutions, LLC ("SFS") and the response[2] filed by the plaintiff, Locke D. Barkley, Chapter 13 Trustee for the Bankruptcy Estate of Becky McCollum.

### I.    JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334, and the *United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 6, 1984. This is a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(A).

### II.    FINDINGS OF FACT[3]

The plaintiff filed the original complaint against Global Client Solutions ("GCS") and Stonepoint.[4] Stonepoint answered the complaint.[5] GCS instead filed a Motion to Dismiss or Alternatively, to Compel Arbitration and Stay or

---

[1] (A.P. Dkt. ## 120, 122, 124).
[2] (A.P. Dkt. # 134).
[3] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such, and vice versa.
[4] (A.P. Dkt. # 1).
[5] (A.P. Dkt. # 24).

2

Dismiss the Case, requesting that Count VI, Breach of Fiduciary Duty be compelled to arbitration.[6] The Court granted GCS's motion and dismissed Count VI. The claims against GCS have since been resolved.[7]

The plaintiff then filed a motion to amend the complaint to add multiple parties and new claims.[8] The Court granted the motion, and the plaintiff amended her complaint to add Norris, Cade, and SFS and to add six new claims against all remaining defendants.[9] The defendants then filed their Motion.[10] In her response, the Trustee withdrew Count I as to Norris.[11]

The plaintiff alleges, and the defendants admit, that prior to filing this bankruptcy case, the debtor engaged Stonepoint for debt relief services.[12] Neither party disputes that the debtor signed an agreement with Stonepoint, which includes an arbitration provision, providing, in part:

> In the event of any controversy between the parties, including, but not limited, to any claim, dispute, demand, cross claim, counterclaim, or third party complaint (whether contractual, statutory, in tort, or otherwise) arising out of or relating to this Agreement or its performance, breach, termination, enforcement, interpretation or validity, including the validity, scope, or

---

[6] (A.P. Dkt. # 6).
[7] (A.P. Dkt. # 108, p. 1).
[8] (A.P. Dkt. # 89).
[9] (A.P. Dkt. # 104); (A.P. Dkt. # 108).
[10] (A. P. Dkt. ## 120, 122, 124).
[11] (A.P. Dkt. # 134, p. 2).
[12] (A.P. Dkt. # 1, ¶ 2; A.P. Dkt. # 5, ¶ 2; A.P. Dkt. # 108, ¶ 2; A.P. # 121, p. 3).

3

applicability of this provision to arbitrate, must be resolved by binding and confidential arbitration.[13]

None of the new defendants were signatories to the agreement.

The issues are (1) whether the new, non-signatory defendants are covered by the arbitration agreement, and (2) whether the defendants may compel arbitration of all claims.

### III. CONCLUSIONS OF LAW

The Federal Arbitration Act ("FAA") requires that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[14] The Court of Appeals for the Fifth Circuit has previously held that consistent with the policy of the FAA, "all doubts concerning the arbitrability should be resolved in favor of arbitration."[15] The plaintiff, as the party opposing arbitration, bears the burden of proving that Congress intended to preclude arbitration of the disputed claims.[16]

The Fifth Circuit has established "a bifurcated inquiry to determine whether parties should be compelled to arbitrate a dispute."[17] First, the Court must determine whether the parties agreed to arbitrate the dispute by forming

---

[13] (A.P. Dkt. # 6, Ex. A, ¶ XVII).
[14] 9 U.S.C. § 2.
[15] *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002).
[16] *Green Tree Financial Corp.-Ala. v. Randolph*, 531 U.S. 79, 81 (2000).
[17] *Washington Mutual Finance Group, LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004).

a valid, enforceable contract under state law and whether the dispute falls within the scope of the arbitration agreement.[18]  Second, "[o]nce the court finds the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claim non-arbitrable."[19]

### A. The arbitration agreement is valid and applies to all defendants.

As discussed in the Court's prior opinion, the parties do not dispute that the agreement was validly formed and enforceable between Stonepoint and the debtor.[20]  The plaintiff does not contend in the amended complaint or her response that the debtor did not sign the agreement, that it was obtained by fraud, or that any grounds in law or equity exist for the revocation of the agreement.

The defendants assert that Norris, Cade, and SFS, though non-signatories to the agreement, may compel the claims against them to arbitration.[21]  In her response, the plaintiff did not dispute the applicability of the agreement to the non-signatory defendants.[22]  The Fifth Circuit has held that signatories are:

> estopped from preventing arbitration of their disputes with nonsignatories when: (1) the signatory to a written agreement containing an arbitration clause must rely on the terms of the

---

[18] *Id. See also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944; *OPE Int'l, LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445-46 (5th Cir. 2001).
[19] *Bailey*, 364 F.3d at 263.
[20] (A.P. Dkt. # 47).
[21] (A.P. Dkt. # 121).
[22] (A.P. Dkt. # 134).

5

written agreement in asserting its claims against a non-signatory (the direct-benefits prong); or (2) when the signatory raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract (the concerted-misconduct prong).[23]

The Fifth Circuit has explained that the purpose of estoppel is to prevent signatories from invoking an agreement and claiming its benefits, while attempting to escape its consequences.[24] Conversely, it prevents a non-signatory from being liable for duties imposed by an agreement, without the protections of the agreement.[25] As some courts have noted, equitable estoppel prevents a signatory from avoiding arbitration by simply suing a non-signatory.[26] Here, both circumstances which may trigger equitable estoppel are present. The plaintiff's claims against the non-signatory defendants rely on the terms of the agreement with Stonepoint. But for the agreement, the plaintiff's claims of breach of fiduciary duty, breach of contract, bad faith, breach of the duty of good faith and fair dealing, negligence, civil conspiracy, and unjust enrichment would not exist. Further, the plaintiff alleges interdependent claims of concerted misconduct against the signatory and the

---

[23] *Amstar Mortg. Corp. v. Indian Gold, LLC*, 517 F. Supp. 2d 889, 894-95 (S.D. Miss. 2007) (citing *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 528–29 (5th Cir.2000)).
[24] *Westmoreland v. Sadoux*, 299 F3d 462, 466 (5th Cir. 2002).
[25] *Amstar*, 517 F. Supp. 2d at 895.
[26] *Covington v. Aban Offshore Ltd.*, 650 F.3d 556, 559 (5th Cir. 2011).

6

non-signatories. The non-signatory defendants may compel the claims to arbitration, if otherwise appropriate.

The Court then must determine whether the claims fall within the scope of the agreement. Notably, the plaintiff does not expressly contend that any of its claims are not subject to the arbitration provision in the agreement. Because the agreement's language is very broad and covers a variety of claims and disputes "arising out of or relating to this agreement or its performance," including the claims at issue here, the Court finds that all twelve claims fall within the scope of the arbitration provision.[27]

### B. Core claims may remain with this Court, but non-core claims must be arbitrated.

Bankruptcy courts may decline to enforce arbitration agreements when "the cause of action at issue is not derivative of the pre-petition legal or equitable rights possessed by a debtor but rather is derived entirely from the federal rights conferred by the Bankruptcy Code."[28] The Fifth Circuit explained that bankruptcy courts retain "significant discretion to assess whether arbitration would be consistent with the purpose of the Code, including the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation,

---

[27] (A.P. Dkt. # 6, Ex. A, ¶ XVII).
[28] *Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1069 (5th Cir. 1997).

7

and the undisputed power of a bankruptcy court to enforce its own orders."[29] But bankruptcy courts may not refuse to compel arbitration if the matters in dispute do not "invoke a substantive right created by the federal bankruptcy law" or "could exist outside of bankruptcy."[30] Ultimately, the "nonenforcement of an otherwise applicable arbitration provision turns on the underlying nature of the proceeding, *i.e.,* whether the proceeding derives exclusively from the provisions of the Bankruptcy Code and, if so, whether arbitration of the proceeding would conflict with the purposes of the Code."[31]

*1. The core claims will remain with this Court.*

The defendants admit in their brief that "the [plaintiff] alleged five core claims" and that "Counts I through V arise under the Bankruptcy Code."[32] Because the claims arise under the Code, the Court has discretion to decline to compel arbitration.[33] Count I is a turnover of estate property claim and Count III is an accounting claim, both grounded in 11 U.S.C. § 542. Those claims derive solely from the provisions of the Code and rely on the power of the Court to enforce its own orders. The plaintiff's claims in Counts I and III stem from her statutory rights as the trustee, to maximize the estate and protect the

---

[29] *Id.*
[30] *Id.*
[31] *Id.* at 118 F.3d at 1067.
[32] (Dkt. # 123, pp. 5, 20).
[33] *Nat'l Gypsum Co.,* 118 F.3d at 1069.

8

rights of creditors.[34] Count II alleges fraudulent transfer against the defendants, which is derived from statutory rights provided by the Bankruptcy Code under 11 U.S.C. §§ 544 and 548. The Code specifically provides for the trustee to pursue fraudulent transfer claims on behalf of the estate and its creditors, and arbitration of the fraudulent transfer claim would conflict with the purposes of the Code.[35] Count IV requests the Court order the defendants to return all payments made by the debtor for services of the defendants pursuant to 11 U.S.C. § 329. Any payments contemplated by section 329 would affect the administration of the estate, and thereby the rights of creditors. The Bankruptcy Code specifically empowers the Court to retain discretion over the reasonableness of the value of such services.[36] Count V seeks damages for negligent or intentional violations of 11 U.S.C. § 526. This claim would not be available to the plaintiff outside the bankruptcy case. The Supreme Court of the United States has noted that section 526 was enacted to correct abusive

---

[34] *See* 11 U.S.C. §§ 323, 542, and 704;. *See also In re Huffman*, 486 B.R. 343, 355, 365 (Bankr. S.D. Miss. 2013) (finding that a turnover of estate property and accounting claims should not be compelled to arbitration).

[35] *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1155 (3d Cir. 1989) ("Claims asserted by the trustee under section 544(b) are not derivative of the bankrupt. They are creditor claims that the Code authorizes the trustee to assert on their behalf [....] Thus, there is no justification for binding creditors to an arbitration clause with respect to claims that are not derivative from one who was a party to it"); *Huffman*, 486 B.R. at 362 ("As to the Trustee's fraudulent transfer claim, courts have frequently overridden arbitration agreements") (citing *Gandy v. Gandy (In re Gandy)*, 299 F.3d 489, 500 (5th Cir. 2002); *Hays & Co.* 885 F.2d at 1161 (3d Cir. 1989); *Bethlehem Steel Corp. v. Moran Towing Corp. (In re Bethlehem Steel Corp.)*, 390 B.R. 784, 795 (Bankr. S.D.N.Y. 2008)).

[36] 11 U.S.C. § 329(b) ("If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment…").

practices by debt relief agencies, which is what the plaintiff is seeking here.[37] Following the Supreme Court's analysis of section 526, the Bankruptcy Court for the Southern District of Mississippi refused to compel arbitration on a section 526 claim, explaining "[i]t is unlikely that Congress intended that the role of bankruptcy courts in enforcing 11 U.S.C. § 526 be overridden by private parties through prepetition contracts. Congress clearly contemplated the regulation of debt relief agencies [. . .] through the BAPCPA."[38] Compelling arbitration would diminish the purposeful nature of section 526 to regulate debt relief agencies. Accordingly, the Court will exercise its discretion and deny arbitration of Counts I through V. Claims I through V will proceed here.[39]

### 2. The non-core claims must be arbitrated.

Counts VI through XII are non-core claims that do not invoke any right created by federal bankruptcy law and could exist outside of bankruptcy.[40]

---

[37] *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229 (2010).
[38] *Huffman*, 486 B.R. at 363.
[39] "When confronted with litigants advancing both arbitrable and nonarbitrable claims [. . .] courts have discretion to stay nonarbitrable claims [. . . .] [C]ourts generally refuse to stay proceedings of nonarbitrable claims when it is feasible to proceed with the litigation." (*Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n. 23, 103 S.Ct. at 939 n. 23 (1983); *AgGrow Oils, L.L.C., v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 242 F.3d 777, 782–83 (8th Cir.2001); *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 225 (1985) (White, J., concurring) (noting that the "heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course")).
[40] *Matter of Wood*, 825 F.2d, 90, 97 (5th Cir. 1987).

Count VI alleges breach of fiduciary duty.[41] Though Count VI now incorporates the added defendants, the Court here relies on its prior analysis that Count VI is non-core and should be compelled to arbitration.[42] Count VII alleges breach of contract, Count VIII alleges bad faith breach of contract, and Count IX alleges breach of the duty of good faith and fair dealing. Each of these claims are grounded in state law and all arose prepetition. Count X alleges negligence, Count XI alleges civil conspiracy, and Count XII alleges unjust enrichment.[43] These claims also could exist outside of bankruptcy and are tangential to the bankruptcy case. None of these claims derive from the Bankruptcy Code and arbitration would not conflict with the purposes of the Code. Counts VI through XII must be arbitrated.

### C. Arbitration was not waived as to new claims or new defendants.

The plaintiff's only argument against compelling arbitration is that Stonepoint waived arbitration by waiting approximately nine months before moving to compel arbitration. The defendants argue that by adding new claims and new defendants, the plaintiff changed the nature of the proceeding. The Court largely agrees. While it is true that the right to arbitrate a dispute is subject to waiver, "[t]here is a strong presumption against finding a waiver of

---

[41] Count VI was originally brought against GCS and Stonepoint (A.P. Dkt. # 1). The Court granted GCS's Motion to Compel Count VI to arbitration (A.P. Dkt. ## 6, 47). The plaintiff has realleged Count VI against the remaining defendants (A.P. Dkt. # 108).
[42] (A.P. Dkt. # 47).
[43] *Id.*

11

arbitration."[44] The Fifth Circuit has held that "a party waives its right to arbitrate if it (1) 'substantially invokes the judicial process' and (2) thereby causes 'detriment or prejudice' to the other party."[45] A party substantially invokes the judicial process by taking some overt act that evinces a desire to resolve the arbitrable issue through litigation, particularly by seeking a decision on the merits.[46]

Counts I through V are core claims and will not be compelled to arbitration, so the plaintiff's waiver argument as to the first five counts is moot. When the plaintiff added the new claims, Stonepoint's next substantive filing was the Motion, when Stonepoint sought arbitration of all counts. Just as the added parties could not raise arbitration until they were added to the case, Stonepoint could not seek arbitration of new claims until those claims were asserted. Stonepoint has not "engage[d] in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." [47] Arbitration of the new claims has not been waived.

### D. The case should not be dismissed for failure to state a claim.

The defendants argue in the alternative that the Court should dismiss the claims remaining before the Court for failure to state a claim under Rule

---

[44] *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004).
[45] *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 421 (5th Cir. 2014) (*quoting Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986)).
[46] *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir.1999).
[47] *Id.*

12

12(b)(6). In evaluating whether a complaint fails to state a claim, the Court must assume the truth of all factual allegations in the complaint.[48] To survive a motion to dismiss, a complaint may not rest on mere conclusions, but must assert specific facts, which support a claim for relief that is plausible.[49] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [. . .] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and formulaic recitation of a cause of action's elements will not do."[50] The only claims remaining before the Court are counts I through V. Viewing the facts pleaded in the amended complaint in favor of the plaintiff and assuming those facts to be true, the Court finds that the plaintiff has sufficiently stated her claims. Counts I through V will not be dismissed.

Accordingly, it is hereby **ORDERED, ADJUDGED** and **DECREED** that the motion to stay and compel is **DENIED** as to Counts I through V. The motion to stay and compel is **GRANTED** as to Counts VI through XII and those claims are **STAYED** pending a ruling from the arbitrator. The motion to dismiss is **DENIED**.

##END OF OPINION##

---

[48] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).
[49] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).
[50] *Id.* at 546.

13